IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KG DONGBU STEEL CO., LTD.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES,<br><br>　　　　　Defendant. | Court No. 23-00055 |

**COMPLAINT**

1.　　Plaintiff KG Dongbu Steel Co., Ltd. (formerly Dongbu Steel Co., Ltd.) ("Plaintiff" or "KG Dongbu") by and through its counsel hereby alleges and states as follows:

**JURISDICTION**

2.　　Plaintiff brings this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest certain aspects of the final results of the administrative review of the countervailing duty ("CVD") order on certain corrosion-resistant steel products ("CORE") from the Republic of Korea, Case No. C-580-879, issued by the International Trade Administration of the United States Department of Commerce ("Commerce").  *Certain Corrosion-Resistant Steel Products From the Republic of Korea:  Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2020*, 88 Fed. Reg. 7,946 (Dep't Commerce Feb. 7, 2023) ("*CORE 2020 Final Results*") and accompanying Issues and Decision Memorandum ("CORE 2020 IDM").  The challenged review covered entries in calendar year 2020.

3.　　This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

14197285–1

**PARTIES AND STANDING**

4.  Plaintiff is a manufacturer and exporter to the United States of CORE from Korea, and therefore is an interested party within the meaning of sections 771(9)(A) and 516A(f)(3) of the Act, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3). Plaintiff was also a party to the administrative proceeding that led to the determination that is being challenged herein, as Plaintiff was selected by Commerce as a mandatory respondent, responded to all of Commerce's questionnaires during the course of the proceeding, and submitted a case brief to Commerce. Accordingly, Plaintiff has standing pursuant to 28 U.S.C. § 2631(c) to commence this action.

**TIMELINESS OF THE ACTION**

5.  On February 7, 2023, Commerce published in the *Federal Register* the *Final Results* of the 2020 administrative review of the CORE CVD order. 88 Fed. Reg. at 7,946. Plaintiff timely filed a Summons on March 8, 2023, and this Complaint is filed within thirty days of the filing of the Summons, in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of this Court.

**STATEMENT OF FACTS**

6.  On July 25, 2016, Commerce published a CVD order on CORE from Korea with a subsidy rate for Dongbu Steel Co. Ltd. /Dongbu Incheon Steel Co. Ltd. ("Dongbu") of 1.19 percent. *Certain Corrosion-Resistant Steel Products From India, Italy, the Republic of Korea and the People's Republic of China: Countervailing Duty Order*, 81 Fed. Reg. 48,387, 48,388 (Dep't Commerce July 25, 2016) ("CVD Order"). Dongbu's subsidy rate, based on certain recurring subsidy programs used during the calendar year 2014 period of investigation, consisted almost entirely (*i.e.*, 1.13 percent) of benefits from the 2014 restructuring of Dongbu's outstanding long-term loans and bonds by its creditors committee under its corporate workout

program.  *Countervailing Duty Investigation of Certain Corrosion-Resistant Steel Products From the Republic of Korea:  Final Affirmative Countervailing Duty Determination, and Final Affirmative Critical Circumstances Determination, in Part,* 81 Fed. Reg. 35,310 (Dep't Commerce June 2, 2016) and accompanying Issues and Decision Memorandum at 7.

7. On March 28, 2019, Commerce published the *Final Results* of its first administrative review of the CVD order on CORE from Korea with subsidy rates for Dongbu of 7.63 percent for the 2015 portion of the period of review ("POR") and 8.47 percent for the 2016 portion of the POR.  *Certain Corrosion-Resistant Steel Products From the Republic of Korea: Final Results and Partial Rescission of Countervailing Duty Administrative Review: 2015-2016*, 84 Fed. Reg. 11,749, 11,750 (Dep't Commerce Mar. 28, 2019) ("*CORE 2015-2016 Final Results*") and accompanying Issues and Decision Memorandum ("CORE 2015-2016 IDM"). Dongbu's subsidy rates, based on certain recurring subsidy programs used during the 2015 and 2016 PORs, consisted almost entirely (*i.e.*, 7.62 percent and 8.45 percent, respectively) of benefits from the restructuring of Dongbu's outstanding long-term loans and bonds by its creditors committee under its corporate workout program.  CORE 2015-2016 IDM at 5.

8. In 2015 and again in 2016, Dongbu's creditors committee approved debt-to-equity swaps ("D/E Swaps") by both government-controlled and private commercial banks as part of Dongbu's corporate workout program.  *See* Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Dongbu's Initial Questionnaire Response," at 31, 34 (Nov. 29, 2021) ("KG Dongbu's IQR").  Despite Petitioners' objections and their claim that Dongbu was unequityworthy at the time of these transactions, Commerce found that these D/E Swaps were

consistent with the usual investment practice of private investors and did not confer a benefit to Dongbu.  CORE 2015-2016 IDM at 5 and 34.

9. On March 17, 2020, Commerce published the *Final Results* of its second (2017) administrative review of the CVD order on CORE from Korea with a subsidy rate for Dongbu of 7.16 percent.  *Certain Corrosion-Resistant Steel Products From the Republic of Korea:  Final Results of Countervailing Duty Administrative Review; 2017*, 85 Fed. Reg. 15,112, 15,113 (Dep't Commerce Mar. 17, 2020) ("*CORE 2017 Final Results*") and accompanying Issues and Decision Memorandum ("CORE 2017 IDM").  Dongbu's subsidy rate again consisted entirely of recurring benefits from the prior restructuring of Dongbu's outstanding long-term loans and bonds by its creditors committee under its corporate workout program.  CORE 2017 IDM at 5-6.  Again, despite Petitioners' objections and claim that Dongbu was unequityworthy, Commerce found that the 2015 and 2016 D/E Swaps were consistent with usual investment practice of private investors and did not confer a benefit to Dongbu.  CORE 2017 IDM at 4-5 and 36-37.

10. During the 2018 period of review for the third administrative review, Dongbu's creditors committee approved third D/E swap by both government-controlled and private commercial banks as part of Dongbu's corporate workout program.  KG Dongbu's IQR at 35-36.

11. On June 1, 2021, Commerce published the *Final Results* of its third (2018) administrative review of the CVD order on CORE from Korea with a subsidy rate for Dongbu of 6.83 percent.  *Certain Corrosion-Resistant Steel Products From the Republic of Korea:  Final Results and Partial Rescission of Countervailing Duty Administrative Review: 2018*, 86 Fed. Reg. 29,237, 29,238 (Dep't Commerce June 1, 2021) ("*CORE 2018 Final Results*") and accompanying Issues and Decision Memorandum ("CORE 2018 IDM").  Dongbu's subsidy rate consisted entirely of recurring benefits from the 2018 restructuring of Dongbu's outstanding

long-term loans and bonds by its creditors committee under its corporate workout program. CORE 2018 IDM at 6. Again, despite Petitioners' objections and claim that Dongbu was unequityworthy, Commerce found that the D/E Swaps were consistent with usual investment practice of private investors and did not confer a benefit to Dongbu. CORE 2018 IDM at 5-6, 37-38.

12. On July 16, 2021, Commerce published the *Preliminary Results* of its fourth (2019) administrative review of the CVD order on CORE from Korea with a preliminary subsidy rate for Dongbu of 10.52 percent. *Certain Corrosion-Resistant Steel Products From the Republic of Korea: Preliminary Results of Countervailing Duty Administrative Review: 2019*, 86 Fed. Reg. 37,740 (Dep't Commerce July 11, 2021) ("*CORE 2019 Preliminary Results*") and accompanying Preliminary Decision Memorandum ("CORE 2019 PDM"). In the *CORE 2019 Preliminary Results*, Commerce reversed its consistent findings in the first, second and third reviews that the first through third (2015, 2016, 2018) D/E Swaps were not countervailable. Instead, Commerce claimed that "{a}fter further analysis of the facts on the record of this immediate review, we have determined not to rely on the private investor prices for the first, second, and third equity infusions, because they were not 'significant' within the meaning of 19 CFR 351.507(a)(2)(ii)." CORE 2019 PDM at 16. Thus, for the first time in the history of this CORE CVD proceeding, Commerce determined that Dongbu had received a non-recurring subsidy and allocated the benefits over the 15-year AUL period.

13. During the 2019 period of review, Dongbu published public notice announcing a bidding process that sought acquisition by a third party of newly issued common stock that would result in the transfer of corporate management rights. KG Dongbu's IQR at 36. Potential investors that submitted a confidentiality agreement received private and confidential

information of Dongbu to assist them in determining whether to participate in the bidding process. *Id.* Among the potential investors that received the bidding materials, three submitted preliminary bids, including the KG Consortium. *Id.* These bids were reviewed by the financial advisors and all qualified for the final bidding process, but only the KG Consortium submitted a final bid. *Id.* at 37. Following counteroffers and negotiations between the financial advisors and the KG Consortium, the final investment amount bid by the KG Consortium was accepted. *Id.* at 39. In separate agreements, the creditors committee agreed to a fourth D/E Swap and another restructuring of Dongbu's outstanding long-term loans and bonds. *Id.* Finally, the creditors committee, Dongbu's board of directors and its general shareholders meeting each in sequence approved the entire package. *Id.* In its initial questionnaire response, KG Dongbu provided a detailed explanation of this process and eighteen supporting exhibits stretching from the initial decision to proceed with an M&A transaction through to final approval of the transaction by the Dongbu general shareholders meeting, which resulted in the change in ownership during the 2019 POR. KG Dongbu's IQR at 35-46, Exhibit B-16 to Exhibit B-34.

14. In its *CORE 2019 Preliminary Results*, Commerce did not address the effect of the change-in-ownership of Dongbu on any non-recurring subsidies that Dongbu had received. Instead, Commerce merely stated: "we note that KG Dongbu did not request that any of the existing subsidies be extinguished due to the change in ownership." CORE 2019 PDM at 7. However, at the time of KG Dongbu's questionnaire responses in the 2019 administrative review, Commerce had not found that Dongbu had received any non-recurring subsidies during the AUL period. *E.g.*, CORE 2017 IDM at 36-37. Until Commerce found for the first time in the *CORE 2019 Preliminary Results* that the 2015-2018 D/E Swaps provided non-recurring

subsidies during the AUL period, there had been no basis for Dongbu to raise the issue of the extinguishment of existing, non-recurring subsidies as a result of the change in ownership.

15. On January 19, 2022, Commerce published the *Final Results* of its fourth (2019) administrative review of the CVD order on CORE from Korea with a subsidy rate for KG Dongbu of 10.51 percent. *Certain Corrosion-Resistant Steel Products From the Republic of Korea: Final Results and Partial Rescission of Countervailing Duty Administrative Review: 2019*, 87 Fed. Reg. 2759, 2760 (Dep't Commerce Jan. 19, 2022) ("*CORE 2019 Final Results*") and accompanying Issues and Decision Memorandum ("CORE 2019 IDM"). Despite KG Dongbu's arguments during the 2019 administrative review and its prior determinations, Commerce continued to determine that the private investor prices for the first, second and third equity infusions were not significant, and continued to determine that the alleged subsidies from the first three D/E swaps were not extinguished by the 2019 acquisition by the KG Consortium. *Id.*

16. KG Dongbu challenged the *CORE 2019 Final Results* before the U.S. Court of International Trade pursuant to 19 U.S.C. § 1615a(a)(2)(A)(i)(I) and 19 U.S.C. § 1615a(a)(2)(B)(iii). Summons, *KG Dongbu Steel Co., Ltd. v. United States*, No. 22-00047 (Ct. Int'l Trade Feb. 16, 2022), ECF No. 1. In that appeal, KG Dongbu contends that Commerce's determinations in the *CORE 2019 Final Results* that the first through third D/E swaps provided a countervailable subsidy to KG Dongbu, and that the same alleged subsidies passed through from Dongbu to KG Dongbu after the acquisition by the KG Consortium, were unsupported by substantial evidence and contrary to law. Brief in Support of Plaintiff KG Dongbu Steel Co., Ltd. Dongu Steel Co., Ltd. and Dongbu Steel Co., Ltd.'s Motion for Judgment on the Agency Record, *KG Dongbu Steel Co., Ltd. v. United States*, No. 22-00047 (Ct. Int'l Trade Aug. 29,

2022), ECF No. 33-2.  KG Dongbu also argues that Commerce incorrectly calculated the uncreditworthy benchmark rate and the unequityworthy discount rates in the *CORE 2019 Final Results*.  *Id.*

17.    On September 7, 2021, Commerce initiated an administrative review of the CVD order on CORE from Korea covering calendar year 2020, which included KG Dongbu among the companies for which reviews were requested.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 50,034, 50,040 (Dep't Commerce Sept. 7, 2021).  This is the review at issue in this appeal.

18.    On September 28, 2021, Commerce selected KG Dongbu as a mandatory respondent in this administrative review and issued initial questionnaires to KG Dongbu and the Government of Korea ("GOK") the following day. *See* Memorandum from Joshua Simonidis, Int'l Trade Compliance Analyst, AD/CVD Operations, Office VIII to Irene Darzenta Tzafolias, Director, Office VIII, Antidumping and Countervailing Duty Operations, "Certain Corrosion-Resistant Steel Products from the Republic of Korea: Respondent Selection," (Sept. 28, 2021); Letter from Bob Palmer, Program Manager, AD/CVD Operations, Office VIII to Yongsik Song, Embassy of the Republic of Korea, "Administrative Review of Certain Corrosion-Resistant Steel Products from the Republic of Korea:  Countervailing Duty Questionnaire," (Dep't Commerce Sept. 29, 2021) ("Initial Questionnaire").

19.    On page III-1 of Section III of the initial questionnaire, Commerce specifically instructed that:

> Absent new information warranting a program reexamination, we will not reevaluate prior determinations regarding the countervailability of programs.  This includes determinations that previously examined programs are or are not countervailable.

Initial Questionnaire at III-1.

20. On October 27, 2021, KG Dongbu submitted its Affiliated Companies Response in the 2020 review to Commerce. *See* Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Corrosion Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Dongbu's Affiliated Companies Response," (Oct. 27, 2021) ("Dongbu's ACR"). Commerce's questionnaire included a question about any change in ownership, etc., during the AUL period (*i.e.*, 2005-2018) and whether the company wished to challenge Commerce's baseline presumption that *non-recurring* subsidies continue to benefit the recipient during the 15-year allocation period. *Id.* at 12-14. KG Dongbu explained that it is submitting a Change-in-Ownership ("CIO") Appendix with its initial questionnaire response. *Id.* at 13-14.

21. On November 29, 2021, KG Dongbu, Dongbu Incheon Steel Co., Ltd. and KG Steel Co., Ltd. submitted an initial questionnaire response and provided a CIO Appendix based on the acquisition of Dongbu by the KG Consortium. KG Dongbu's IQR at Exhibit B-35. As in prior reviews, Commerce's questionnaire asked the exact same 15 questions regarding Dongbu's debt restructuring, which included questions about the restructuring of its outstanding long-term loans and bonds and the debt-to-equity swaps that occurred under its corporate workout program. *Id.* at 20-64. The heading to that section of the questionnaire stated specifically: "Commerce found the restructuring of debt and loans received by Dongbu to be countervailable previously. We do not intend to reevaluate the countervailability of this program." *Id.* at III-8. As in the fourth (2019) administrative review, Dongbu provided the same responses and accompanying exhibits that it had provided in prior reviews with respect to the restructuring of its long-term loans and bonds, including the fourth restructuring in 2019, as well as the 2015 and 2016 D/E Swaps and the third D/E Swap that occurred in 2018. *Compare, e.g.*, *id.* at Exhibit B-1 to Exhibit B-34, *with* Letter from Morris, Manning & Martin LLP to Sec'y Commerce, "Certain

Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Dongbu's Initial Questionnaire Response" at Exhibit B-1 to Exhibit B-34 (Dec. 2, 2020) (on record of Case No. C-580-879) ("KG Dongbu's 2019 IQR").

22. On August 5, 2022, Commerce published the *Preliminary Results* of its fifth (2020) administrative review of the CVD order on CORE from Korea with a preliminary subsidy rate for KG Dongbu of 9.51 percent. *Certain Corrosion-Resistant Steel Products From the Republic of Korea: Preliminary Results and Partial Rescission of the Countervailing Duty Administrative Review, 2020*, 87 Fed. Reg. 47,973 (Dep't Commerce Aug. 5, 2022) ("*CORE 2020 Preliminary Results*") and accompanying Preliminary Decision Memorandum ("CORE 2020 PDM"). As part of the overall subsidy rate, Commerce calculated a 4.28 percent subsidy based on the 2020 restructuring of Dongbu's outstanding long-term loans and bonds by its creditors committee under its corporate workout program. CORE 2020 PDM at 15-16.

23. Like it had in the *CORE 2019 Final Results*, Commerce preliminarily determined that the first through third (2015, 2016, 2018) D/E Swaps were countervailable because private investor prices were not significant pursuant to 19 CFR § 351.507(a)(2)(ii), and calculated a 5.17 percent subsidy as a result of the equity infusions. CORE 2020 PDM at 13, 17; Memorandum from Dennis McClure, AD/CVD Operations Office VIII Int'l Trade Analyst to The File, "Equity Infusions Analysis Memorandum," at 10 (Dep't Commerce July 29, 2022) (on record of Case No. C-580-879). Based on the exact same evidence in prior reviews, Commerce had previously found the private creditors in the D/E Swaps were significant. *E.g.*, CORE 2018 IDM at 37-38. Commerce did not identify any new record evidence in this review that prompted, and was the basis of, Commerce's reconsideration of its prior findings that these three D/E Swaps were not countervailable. CORE 2020 PDM at 15-18.

24.     Commerce also found that KG Dongbu was uncreditworthy in the *CORE 2020 Preliminary Results*. CORE 2020 PDM at 12, 15-16. Thus, Commerce stated that in accordance with 19 C.F.R. 351.505(a)(3)(iii) it calculated an uncreditworthy benchmark, including historical default rates to determine the risk premium. *Id.* This uncreditworthy benchmark was then used to calculate the benefit from Dongbu's restructured long-term loans and bonds. CORE 2019 PDM at 10-12; *see also* Memorandum from Dennis McClure, Int'l Trade Compliance Analyst, Office VIII, AD/CVD Operations to Robert Palmer, Program Manager, Office VIII, AD/CVD Operations, "Preliminary Results Calculation for KG Dongbu Steel Co., Ltd. and Dongbu Incheon Steel Co., Ltd. (collectively, Dongbu)," (Dep't Commerce July 29, 2022) (on record of Case No. C-580-879) ("Preliminary Calculation Memo"). When applying the formula for calculating an uncreditworthy benchmark, Commerce used as the creditworthy benchmark variable in the formula provided in 19 C.F.R. 351.505(a)(3)(iii) the three-year corporate bond rate from the Bank of Korea. Preliminary Calculation Memo at 3. However, in completing the calculation of its uncreditworthy benchmark, Commerce based the variables for the default rates required by the formula on the 3-year term of the creditworthy benchmark instead of the actual 6-year terms of the restructured loans. Preliminary Calculation Memo at Attachment IV, tab "UCW BM."

25.     Commerce also found that KG Dongbu was unequityworthy in the *CORE 2020 Preliminary Results*. CORE 2020 PDM at 12. Thus, because Commerce had also found Dongbu to be unequityworthy, Commerce applied unequityworthy discount rates to calculate the benefit from the government-provided equity infusions, using the same formula and methodology as applied for calculating the uncreditworthy benchmark. *Id.*; Preliminary Calculation Memo at 5. However, in completing the calculation of its uncreditworthy discount rates, Commerce again

based the variables for the default rates required by the formula on the 3-year term of the creditworthy benchmark instead of the 15-year AUL allocation period used for measuring the benefits from the government-provided equity infusions.  Preliminary Calculation Memo at Attachment IV, tabs "UCW BM," "Equity Infusions."

26. On December 16, 2022, KG Dongbu filed its case brief addressing certain errors in the *CORE 2020 Preliminary Results*.  Letter from Morris, Manning & Martin, LLP to Sec'y Commerce, "Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879:  KG Dongbu Steel's Case Brief," (Dec. 16, 2022) ("KG Dongbu Steel's Case Brief").  KG Dongbu argued *inter alia* that:

(1) in finding that the first through third D/E Swaps provided a benefit to Dongbu, Commerce violated its own clearly-articulated standard practice of not reexamining a subsidy program previously found non-countervailable in the absence of any new information on the record, *id.* at 4-12;

(2) Commerce mischaracterized evidence on the record regarding the role of the Korea Development Bank ("KDB") in the workout program by erroneously claiming that the private creditors were controlled by the KDB, *id.* at 12-15;

(3) Private investor prices were available for use as a benchmark and private investor participation in the first three D/E swaps was significant, *id.* at 16-17;

(4) Commerce failed to consider KG Dongbu's response to the Change-in-Ownership Appendix ("CIO Appendix") in the instant review and improperly concluded that any benefit to Dongbu found with respect to the first through third debt-to-equity conversions passed through to KG Dongbu despite the change in ownership, *id.* at 16-35;

(5) The KG Consortium acquired Dongbu in an arm's length transaction for fair market value such that any alleged subsidies from the first three D/E swaps were extinguished by the acquisition, *id.* at 23-33;

(6) Commerce improperly calculated the uncreditworthy benchmark for purposes of measuring the benefits from Dongbu's restructured long-term loans and bonds, *id.* at 36-37; and

(7) Commerce incorrectly calculated the uncreditworthy benchmark rate and the unequityworthy discount rates used to determinate the amount of the benefit from the debt-to-equity swaps, *id.* at 38-39.

27.     On February 7, 2023, Commerce published the *Final Results* of the 2020 administrative review of the CVD order on CORE from Korea with a subsidy rate for KG Dongbu of 9.47 percent.  *Certain Corrosion-Resistant Steel Products From the Republic of Korea:  Final Results and Partial Rescission of Countervailing Duty Administrative Review, 2020*, 88 Fed. Reg. 7,946 (Dep't Commerce Feb. 7, 2023) ("*Final Results*") and accompanying Issues and Decision Memorandum ("CORE 2020 IDM").  Commerce rejected KG Dongbu's arguments concerning the errors identified in KG Dongbu's case brief and, with respect to these issues, the *Final Results* were unchanged from the *Preliminary Results*.  *Id.* at Comment 6 to Comment 8.

28.     This appeal followed.

**STATEMENT OF CLAIMS**

29. This Court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1).

30. Commerce's *Final Results* is unsupported by substantial evidence and is otherwise not in accordance with law in the following respects:

**Count One**

31. Paragraphs 1 through 30 are incorporated by reference as if fully set forth herein.

32. Commerce's determination that the first three D/E Swaps provided a countervailable benefit to KG Dongbu is unsupported by substantial evidence and otherwise not in accordance with law.

**Count Two**

33. Paragraphs 1 through 32 are incorporated by reference as if fully set forth herein.

34. Commerce's determination that any alleged subsidies from the first three D/E swaps passed through from Dongbu to KG Dongbu despite the KG Consortium's acquisition is unsupported by substantial evidence and otherwise not in accordance with law.

**Count Three**

35. Paragraphs 1 through 34 are incorporated by reference as if fully set forth herein.

36. Commerce's calculation of the uncreditworthy benchmark for purposes of measuring the benefits from KG Dongbu's restructured long-term loans and bonds and Commerce's calculation of the unequityworthy discount rate for purposes of measuring the benefits from the equity infusions from government-controlled creditors is unsupported by substantial evidence and is otherwise not in accordance with law.

**PRAYER FOR RELIEF**

37.   For the foregoing reasons, Plaintiff respectfully requests that this Court hold Commerce's *Final Results* unsupported by substantial record evidence and otherwise not in accordance with law.  Plaintiff thus respectfully requests that this Court remand the *Final Results* to Commerce to correct the errors set forth in this Complaint and provide other such relief as this Court deems appropriate.

Respectfully submitted,

**MORRIS MANNING & MARTIN LLP**
1401 Eye Street, NW, Suite 600
Washington, D.C. 20005
(202) 216-4116

/s/ Brady W. Mills
Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Eugene Degnan
Edward J. Thomas III
Jordan L. Fleischer
Nicholas C. Duffey

*Counsel to Plaintiff KG Dongbu Steel Co., Ltd.*

Dated:  April 6, 2023